UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ARIEL MACKLIN, | : |
|     Plaintiff, | : |
| | : |
| v. | :   C.A. No. 19-561WES |
| | : |
| BISCAYNE HOLDING CORP. d/b/a Wild Zebra, | : |
| and CHRISTOPHER VIANELLO, | : |
|     Defendants. | : |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Plaintiff Ariel Macklin, an exotic dancer, sued Defendants Biscayne Holding Corp d/b/a Wild Zebra and Christopher Vianello[1] to recover wages she alleges are owed to her and other similarly situated exotic dancers who performed at the Wild Zebra under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* Nineteen women have filed notices of their intent to opt-in to Macklin's case (collectively, the "Opt-ins"). ECF Nos. 14-20, 22-23. In a separate memorandum and order that issued today,[2] I granted Defendants' motions (ECF Nos. 11 and 27) to the extent that they sought to stay the case in favor of arbitration as to Macklin and sixteen of the nineteen Opt-ins; this determination was based on agreements to arbitrate embedded in authenticated contracts, which also bar each of these dancers from joining a collective action or from leading such an action as class representative. ECF No. 38. Because

---

[1] In this report and recommendation, Defendants Biscayne Holding Corp. d/b/a Wild Zebra and Christopher Vianello are collectively referred to as "Defendants," while the venue at which the Opt-ins claim that they performed is called "the Wild Zebra." As clarified by the first declaration of Defendant Christopher Vianello, the Wild Zebra is actually operated by Biscayne Entertainment Corp., not by the entity named in the complaint, Biscayne Holding Corp. ECF No. 11-1 ¶¶ 3-7. Because this issue does not affect the motion to dismiss the Opt-ins claims, it will not be discussed further.

[2] For a more detailed outline of the procedural posture of this case, the reader is directed to the memorandum and order. ECF No. 38.

this determination left this case with no lead plaintiff, in the memorandum and order, I also denied without prejudice the Opt-ins' motion for conditional certification of a collective action, which at the moment is headless, and directed that a motion to amend to cure that deficiency must be filed in sixty days.

In addition to the motions to compel arbitration, Defendants have moved to dismiss or strike all of the Opt-ins' claims as premature and to dismiss the opt-in notices of three dancers (Sancharae Kelly, Cassandra McRae and Alyssa Trueheart) because they lack standing to assert FLSA claims against the Wild Zebra. ECF No. 27. With respect to these three dancers, there is no arbitration agreement, but Defendants have filed a declaration averring that these individuals were not dancers at the Wild Zebra during any period potentially pertinent to a FLSA claim[3] and thus challenge their standing pursuant to Fed. R. Civ. P. 12(b)(1). ECF Nos. 27 at 32-34; 27-3 at ¶¶ 14, 20-23. Because of the dispositive nature of the latter aspects of Defendants' motion, these arguments are addressed in this report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).

I.   ANALYSIS AND RECOMMENDATION

   A.   **Motion to Dismiss Or Strike All Opt-ins**

Citing Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10, 17 (D.P.R. 2005), Defendants have asked the Court to dismiss all of the Opt-ins from the case, arguing that opting

---

[3] FLSA provides that the action "may be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The instant complaint alleges a willful violation, triggering the three-year limitations period. ECF No. 1 ¶ 57. For the named Plaintiff (Macklin), the applicable period began on October 18, 2016, if she can sustain her allegation that the violation was willful. By contrast, the relevant period for each of the allegedly similarly situated Opt-ins looks back two/three years from the date of the filing of the notice of their intent to opt in. 29 U.S.C. § 256(b) (FLSA action is not considered to be commenced for similarly situated party until she submits written consent to join case). Because of the danger that the passage of time will eat away at potentially viable FLSA claims, courts must be vigilant to interpret FLSA so as not to "thwart Congress' preference to avoid multiple lawsuits where numerous employees allege FLSA violations." Nash v. CVS Caremark Corp., 683 F. Supp. 2d 195, 197 (D.R.I. 2010) (internal quotation marks omitted).

in prior to conditional certification and notice to a collective that has been approved by the Court is contrary to the orderly procedure established by FLSA. ECF No. 27 at 8-10. In Melendez-Cintron, the court faced a chaotic situation caused by a notice sent by plaintiffs' counsel without court-approval, followed by motions to add various opt-ins to the case without filing the required written consent. Id. at 12-13. Finding that the plaintiffs had failed to establish that they and the opt-ins were similarly situated and that the tactics deployed amounted to a "frivolous fishing expedition at the employer's expense," the court struck all of the opt-ins notices. Id. at 17-18; see also Chemi v. Champion Mortg., No. 05-cv-1238 (WHW), 2006 WL 7353427, at *7 (D.N.J. June 21, 2006) (in case where plaintiff failed to demonstrate sufficient facts to establish existence of similarly situated claimants, pre-certification invitations to join suit were improper).

      Defendants read too much into Melendez-Cintron. The Melendez-Cintron decision is based on the court's "discretion to manage the joinder of parties and notice to parties," not on a legal prohibition on opting-in before conditional certification has been addressed. Melendez-Cintron, 363 F. Supp. 2d at 15. To the contrary, Melendez-Cintron holds that "there is nothing in the FLSA . . . that alludes to specific requirements concerning the timing or the content of a notice of consent under Section 16(b) other than it must clearly manifest the individual's consent to become a party plaintiff to the litigation." Id. at 16; see Gonpo v. Sonam's Stonewalls & Art LLC, Civil Action No. 16-40138-MGM, 2018 WL 1725695, at *3 (D. Mass. April 9, 2018) (quoting Hoffmann-LaRoche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion . . . to implement 29 U.S.C. 216(b) . . . by facilitating notice to potential plaintiffs.") Consistent with this proposition are the holdings of many other courts that the FLSA does not *per se* prohibit pre-certification opt-ins. See e.g., Chado v. Nat'l Auto Insps., LLC, Civil No. JKB-17-2945, 2019 WL 1981042 at *2 (D. Md. May 2, 2019) ("it is not necessary for a suit to

3

be certified as a collective action before employees may 'opt in' to it"); Augustyniak v. Lowe's Home Ctr. LLC, 14-CV-00488-JJM, 2015 WL 9077572, at *1-2 (W.D.N.Y. Dec. 16, 2015) (conditional certification is not required to opt in to a FLSA action). Nor are Defendants helped by the passage they quote from Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 225 (3d Cir. 2016): "Generally, *after* conditional certification has been granted . . . individuals file notices providing their written consent to participate in the collective action." ECF No. 27 at 9 (emphasis in original). What Halle actually states is this: "Generally, after conditional certification has been granted (although not always, given the discretionary nature of the first stage), individuals file notices providing their written consent to participate in the collective action." Halle, 842 F.3d at 225 (emphasis added). Halle supports the premise that pre-certification opt-ins are not *per se* prohibited.

That leaves the question whether the Court should nevertheless exercise its discretion to dismiss the Opt-ins in the circumstances of this case. In considering this question, it is important to consider all the ways in which this case differs from Melendez-Cintron. First, by contrast with the Melendez-Cintron court's finding that the claimants were not similarly situated, this Court here already has found that Macklin and the Opt-ins who were dancers at the Wild Zebra during the applicable (to each) statute of limitations period are similarly situated with respect to a potential FLSA violation. ECF No. 38 at 16. Second, by contrast with the chaos created by the Melendez-Cintron notice, here, the dancers were doubtless already on notice because of a series of well-publicized court decisions holding that other clubs in the vicinity of Wild Zebra were violating FLSA by treating dancers as independent contractors; further, the Court does not take umbrage at the social media postings by Macklin's counsel asking for persons with knowledge of the labor practices at the Wild Zebra to contact him. See ECF 38 at 1, 6 n.4. Third, the Court

4

has already engaged with these Opt-ins in that Defendants' motion to stay the case and compel arbitration as to sixteen of them has been granted; twelve have already opted to go to arbitration. Id. at 9. All of these considerations tip strongly against the proposition that dismissal of these Opt-ins is an appropriate approach to managing this case. Also strongly weighing against dismissal is the virtual certainty that, should the Court strike these Opt-ins, the operation of the statute of limitations alone would subsequently defeat what appear to be valid FLSA wage claims. Anjum v. J.C. Penney Co. Inc., No. 13 CV 0460 (RJD) (RER), 2014 WL 5090018, at *12-13 (E.D.N.Y. Oct. 9, 2014) (mindful of prejudice arising from FLSA statute of limitations, court should not dismiss opt-ins who have satisfied the written notice requirements of 29 U.S.C. § 216(b) simply because named plaintiff has not sought conditional certification); see Nash, 683 F. Supp. 2d at 197 (internal quotation marks omitted) (FLSA must be interpreted so as not to "thwart Congress' preference to avoid multiple lawsuits where numerous employees allege FLSA violations").

    Based on the foregoing, I recommend that Defendants' motion to dismiss or strike all of the Opt-ins because they were prematurely filed should be denied.

    **B.**    **Motion to Dismiss Opt-in Notices of Kelly, McRae and Trueheart**

    The other leg of Defendants' motion to dismiss asks the Court to tackle whether the three Opt-ins without arbitration agreements (Kelly, McRae and Trueheart) lack standing. In support of this argument, Defendants rely on the second declaration of Christopher Vianello, which avers that Kelly and Trueheart are total strangers to the Wild Zebra and that McRae never performed at the Wild Zebra within her potential statute of limitations period. ECF No. 27-3 ¶¶ 14, 20-23. Relying on Fed. R. Civ. P. 12(b)(1), Defendants ask the Court to convene an evidentiary hearing to determine this threshold issue, which implicates whether there is subject matter jurisdiction to

proceed on the claims.  ECF No. 27 at 32-34.  In response, the three challenged Opt-ins have provided no additional information to the Court, relying only on their opt-in notices, which do not clearly state that each danced at the Wild Zebra during the period relevant to her claim.  ECF Nos. 15-3, 17-3, 23-2.  Only as to one (McRae) does Plaintiff's counsel represent that she could testify that she performed in the relevant period; however, counsel failed to present anything to the Court to buttress this representation.  ECF No. 36 at 3-4.

If these three opt-in notices were deemed to be the equivalent of a complaint invoking federal-court subject matter jurisdiction brought by any of them as lead plaintiff, the correct procedural course is for standing to be challenged by a responsive Fed. R. Civ. P. 12(b) motion.  In this instance, based on such a motion, the Court would certainly find Defendants have raised a colorable challenge to subject matter jurisdiction that might well result in my recommendation that Kelly and Trueheart be dismissed without prejudice based on their failure plausibly to allege that they have standing, and possibly in my scheduling an evidentiary hearing as to McRae to determine whether she has standing.  See De Angelis v. Nat'l Entm't Grp., LLC, Case No. 2:17-cv-924, 2018 WL 4334553, at *2 (S.D. Ohio Sept. 11, 2018) (to resolve club's jurisdictional argument that lead plaintiff never danced there and therefore did not have standing, court conducts evidentiary hearing and finds that plaintiff had some relationship with club, such that she has "a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction") (internal quotation marks omitted); Ivery v. RMH Franchise Corp., 280 F. Supp. 3d 1121, 1131-32 (N.D. Ill. 2017) (when complaint does not plausibly establish any relationship between lead plaintiff and entity she has sued, it is subject to dismissal without prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)).  The problem is that these Opt-ins are not the named lead plaintiff whose standing to invoke the court's jurisdiction may

appropriately be challenged pursuant to Fed. R. Civ. P. 12(b)(1).  The filing of an opt-in notice is not analogous to Fed. R. Civ. P. 20 "joinder" in that "opt-in plaintiffs are held to a lesser standard than FLSA named plaintiffs or other plaintiffs who join in civil actions."  Halle, 842 F.3d at 225 n.9.  In particular, an opt-in notice filing does not trigger immediate Fed. R. Civ. P. 12(b) review; rather, the appropriate procedural vehicle to tackle opt-in standing is in connection with conditional certification or, more likely, at the step-two phase, in the context of the motion to decertify.  Anjum, 2014 WL 5090018, at *14; see Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357, 364 (D. Me. 2010) (defenses to which opt-in claims may be subject are properly raised at stage-two determination phase).

Based on the foregoing, I find that it is inappropriate for the Court to treat these three opt-in notices as complaints.  One or more or even all of these Opt-ins may seek to become the lead plaintiff(s); in that event, Defendants may challenge their standing.  Otherwise, the standing of these Opt-ins should be addressed after conditional certification based on a complaint brought by a viable lead plaintiff who is not barred by an agreement that mandates arbitration and waives her ability to bring a class or collective action.[4]  See Anjum, 2014 WL 5090018, at *14 (while limitations challenge to standing of opt-ins may well require dismissal of individual claims, that should be addressed in considering motion to decertify, not by reference to consent forms alone).  Therefore, I recommend that the Court deny as premature the motion to dismiss the opt-in notices filed by these three Opt-ins (Kelly, McRae and Trueheart) without prejudice to Defendants' making a challenge to their standing if any of them seeks to become the lead plaintiff, or in connection with conditional certification or on motion to decertify.

---

[4] Based on the second Vianello Declaration, Defendants contend that no such plaintiff exists, in that they initiated the use of the arbitration/waiver of class/collective action agreements in June 2015 and believe that no dancer who was allowed to perform at the Wild Zebra after that date failed to sign one.  ECF No. 27-3 ¶¶ 14-24.

To recap, Kelly, McRae and Trueheart have opted into a FLSA case that now lacks a viable lead plaintiff and cannot proceed to § 216(b) conditional certification until that deficiency is cured. In the related memorandum and order, the Court set a deadline of sixty days from its issuance for the filing of a motion to amend to add a viable lead plaintiff, making clear that if a motion to amend is not filed, Defendants may move to strike the class allegations from the case. ECF No. 38 at 21. If the case reaches that point, the standing of these three Opt-ins should also be reassessed. For now, however, my recommendation is that they remain pending as opt-ins so that the statute of limitations running on any FLSA claims they might have continues to be tolled.

## II.     CONCLUSION

Based on the foregoing, I recommend that Defendants' motion (ECF No. 27) to dismiss or strike all Opt-ins be denied and Defendants' motion to dismiss the three Opt-ins whose standing is challenged be denied without prejudice. The balance of the relief sought by the motion (to stay the case in favor of arbitration) is addressed separately in a memorandum and order that also issued today. ECF No. 38.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 2, 2020